**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **KRISTIE GUIDRY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:05cv1497** |
| | ) | |
| **WENDY CLARE t/a ARA,** | ) | |
| | ) | |
| **and CHEER DYNASTY, LLC** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

The matter comes before the Court on defendants various motions for sanctions, attorney's fees, and costs pursuant to Rule 11, Fed. R. Civ. P. & § 1692k(a)(3) of the Fair Debt Collection Practices Act.[1] Defendants allege that this suit was initiated in bad faith and for the purpose of harassment; accordingly, they seek an award of $26,595.50 to compensate them for the attorney's fees and costs incurred in conjunction with this lawsuit.[2] Additionally, defendant Clare seeks reimbursement for the fees and costs she incurred in connection with a prior lawsuit in which plaintiff sued her, alleging materially identical claims.[3]

---

[1]*See* 15 U.S.C. § 1692k (permitting recovery of attorney's fees and costs upon finding that lawsuit was brought "in bad faith and for the purpose of harassment").

[2]The documentation Clare has provided indicates that she incurred attorney's fees in the amount of $26,360.00 and costs in the amount of $235.50.

[3]The documentation Clare submitted for this prior lawsuit indicates that she incurred attorney's fees in the amount of $17,580.00 and costs in the amount of $29.73.

1

For her part, plaintiff argues that no award of fees or costs is appropriate, as she had a reasonable and good faith basis for asserting the claims pled in both lawsuits, despite the fact that all were ultimately dismissed. A brief overview of the relevant facts and procedural history is instructive to frame the question presented.

This case arises out of a $62.50 check written by plaintiff Kristie Guidry ("Guidry") to defendant Cheer Dynasty ("Cheer"), a Virginia limited liability company that provides cheerleading training and classes. When Guidry's check was returned for insufficient funds, Clare, on behalf of her employer, Cheer, sought to secure payment from Guidry. As a result of Clare's efforts, Guidry sued Clare in federal district court, alleging that Clare committed seven different violations of the Fair Debt Collection Practices Act. Guidry also asserted state law claims alleging (i) intentional infliction of emotional distress; (ii) malicious prosecution; and (iii) false imprisonment.

Specifically, the record reflects the following facts[4]: On March 15, 2004, Guidry wrote check number 1144 from the Royalty Chimney Account in the amount of $62.50 payable to Cheer for cheerleading classes for Guidry's daughter, Alesha. Clare, who is employed as Cheer's office manager, deposited the check on Cheer's behalf. On March 23, 2004, Wachovia Bank returned check number 1144 to Cheer for insufficient funds. After check number 1144 was returned, Clare contacted Guidry and asked her to make good on the returned check. Guidry did

---

[4]Because the case was dismissed pursuant to defendants' motion for summary judgment, the facts recited here are those derived from the record as a whole, and are either undisputed or stated in the light most favorable to Guidry, the non-movant. *See Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (holding that on motion for summary judgment, where material facts are in dispute, all reasonable inferences must be drawn in favor of the non-moving party). Where disputes exist, they are noted, and the facts are construed in the light most favorable to Guidry.

not respond.

On May 24, 2004, Sal Rigoroso, on behalf of Shannon Auto Sales, filed an unrelated felony bad check criminal complaint against Guidry for passing a bad check in excess of $200. In response to this filing, Magistrate Judge David James Fox of Prince William County issued an arrest warrant for Guidry.  This warrant commanded the officer executing the warrant to take Guidry into custody and left the officer no discretion in this regard.

On June 9, 2004, Cheer's attorney, David B. Wilks, sent Guidry a letter on Cheer's behalf asking her again to pay her debt to Cheer.  The text of the letter identified Cheer as the creditor and stated that "[p]ursuant to 15 U.S.C. § 1692(e)(11), please take notice that the purpose of this letter is an attempt to collect a debt ... ."  Guidry did not respond.   On October 25, 2004, American Recovery Agency ("ARA"), a debt recovery firm, sent Guidry a letter on Cheer's behalf asking Guidry to pay her debt to Cheer.  This letter identified Cheer as the creditor in three places and identified the date and amount of the returned check.  Additionally, the letter stated explicitly that it was being sent in an effort to collect the debt Guidry owed Cheer.

In late December 2004, Clare and Guidry had a telephone conversation during which Clare requested that Guidry pay her debt immediately.  The parties disagree over (i) who initiated the call and (ii) when this call took place.  According to Guidry, Clare initiated the call during "the last week of December."  During the course of the call, Guidry falsely informed Clare that she believed she had already made good on her check.  Guidry claims that Clare never identified (i) the debt to which she was referring and (ii) the creditor on whose behalf Clare was calling.

After Clare confirmed that Guidry had not in fact paid her debt to Cheer, Clare telephoned Guidry a second time, on January 1, 2005.  Clare informed Guidry that unless she

3

paid her outstanding debt within 72 hours, she would seek a warrant for Guidry's arrest. When Guidry failed to pay the debt owed to Cheer by the deadline, Clare filed a criminal complaint for misdemeanor larceny by check, in violation of Virginia Code § 18.2-181.

In response to Clare's complaint, Magistrate Judge David Burket, Jr. of Prince William County issued an arrest warrant for Guidry. In contrast to the Shannon Auto Sales felony warrant that had previously issued for Guidry's arrest, the misdemeanor warrant left to the discretion of the officer executing the warrant whether to arrest plaintiff, or alternatively, to serve her with a summons to appear. As it happens, both the felony arrest warrant relating to Shannon Auto Sales' complaint and the misdemeanor arrest warrant relating to Clare's complaint were forwarded to Officer A. W. Dearborn at approximately the same time. Thereafter, at approximately 7:50 p.m. on January 9, 2005, Officer Dearborn executed the Shannon Auto Sales felony arrest warrant against Guidry and Guidry was taken into custody. After plaintiff was already in custody on the felony arrest warrant, at 7:53 p.m. on January 9, Officer Dearborn exercised his discretion to arrest Guidry on the misdemeanor arrest warrant as well.

Upon arrival at the police precinct, Guidry was first processed and fingerprinted in connection with the misdemeanor arrest warrant. After finishing the intake process for the misdemeanor warrant, Guidry was then processed and fingerprinted in connection with the felony arrest warrant. After the fingerprinting and processing procedure was completed with respect to the Shannon Auto Sales felony arrest warrant, Guidry was released on her own recognizance at 8:09 p.m. At no time during this 19 minute detention was plaintiff in custody independent of her Shannon Auto Sales felony arrest. Clare's role in Guidry's arrest was limited to the filing of the misdemeanor complaint that led to the issuance of the misdemeanor arrest warrant. Clare was

4

unaware that Guidry had an outstanding felony arrest warrant against her.

Trial was held on both the misdemeanor and the felony bad check charges on February 16, 2005, in General District Court in Prince William County.  Both the misdemeanor and the felony bad check charges against Guidry were *nolle prossed*.  That same day, Guidry paid Cheer the face amount of check 1144, $62.50, plus the $30.00 bank service charge incurred by Cheer when the check was returned for insufficient funds.

Guidry initially filed suit in federal court against Clare on April 12, 2005, but the complaint in that case was dismissed without prejudice on November 23, 2005, after Guidry failed to effect timely service on Clare within the 120 day time limitation imposed by Rule 4(m), Fed. R. Civ. P.  *See Guidry v. Clare*, 1:05cv413 (November 23, 2005) (Order).  Guidry subsequently refiled her complaint on December 27, 2005.  The only material difference between the two complaints is that Guidry also sued Clare's employer Cheer in the instant, second lawsuit.

Defendants sought dismissal of plaintiff's complaint pursuant to 12(b)(6) and Rule 56, Fed. R. Civ. P., as well as sanctions for filing a frivolous lawsuit.  At oral argument, plaintiff's counsel agreed to a dismissal with prejudice of all state law claims.  By Order dated March 31, 2006, all of plaintiff's remaining federal claims were dismissed either pursuant to Rule 12 or Rule 56, Fed. R. Civ. P.  *Guidry v. Clare*, Case No. 1:05cv1497 (March 31, 2006) (Order).  Clare's motion for sanctions was deferred pending submission of supplemental briefs.  These briefs were timely filed; accordingly, the matter is now ripe for disposition.

## II.

Where, as here, the party against whom sanctions are sought is represented by counsel, Rule 11, Fed. R. Civ. P. requires, as a prerequisite to filing a complaint, that counsel conduct a reasonable investigation of the factual bases underlying the claims in the complaint. *See, e.g.*, *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 987 (4th Cir. 1987). And, Rule 11 makes clear that by signing the complaint, an attorney represents that "the allegations and other factual contentions [within the complaint] have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."[5]   Filing a claim that is devoid of any basis in fact or law constitutes a violation of Rule 11(b).  *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990).  A legal argument fails to satisfy Rule 11(b)(2) when "in applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified."  *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (legal argument warrants Rule 11 sanctions if it has "absolutely no chance of success under the existing precedent").[6]

Rule 11 also requires an attorney to certify, based on his pre-filing inquiry, that he believes that the claims asserted are not being presented for any "improper purpose," including harassment.  *See* Rule 11, Fed. R. Civ. P. (defining "improper purpose" to include harassment). In determining whether a suit was motivated by an "improper purpose," a district court must judge the conduct of counsel under an objective standard of reasonableness rather than assessing

---

[5]*See* Rule 11(b)(3), Fed. R. Civ. P.

[6]*See also In re Sargent,* 136 F.3d 349, 352 (4th Cir. 1998) (same); *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (reciting objective standard for Rule 11 sanctions).

subjective intent.[7]  In other words, it is not enough that the injured party subjectively believes

that a lawsuit was brought to harass or to focus negative publicity on the injured party; instead,

such improper purposes must be ascertained from the lack of a factual or legal basis for the

lawsuit.  *See Stevens v. Lawyers Mut. Liab. Ins. Co. of North Carolina*, 789 F.2d 1056, 1060 (4th

Cir. 1986) (sanctions appropriate if suit lacks "reasonable basis in fact and law").

Circumstantial facts surrounding the filing may also be considered as evidence of the signer's

purpose.  Repeated filings, the outrageous nature of the claims made, or a signer's experience in

a particular area of law, under which baseless claims have been made, are all appropriate

indicators of an improper purpose.  *In re Kunstler*, 914 F.2d at 519.

        The standard for sanctions liability under the FDCPA essentially mirrors Rule 11's

"improper purpose" analysis.  The FDCPA authorizes the imposition of sanctions upon a finding

that a claim was asserted "in bad faith and for the purpose of harassment."[8]  15 U.S.C. § 1692k.

The question, then, is whether these principles, applied here, warrant the conclusion that all or

any of the plaintiff's claims were asserted in bad faith or for the purpose of harassment, thereby

compelling an award of sanctions to defendants.

        To begin with, it is pellucidly clear that five and one half of plaintiff's seven FDCPA

claims are meritless, indeed flatly frivolous.  Thus, sanctions are appropriate as to these claims.

        Guidry's first FDCPA claim alleges that defendants violated 15 U.S.C. § 1692d(6) when

---

        [7]*See Stevens v. Lawyers Mut. Liab. Ins. Co. of North Carolina*, 789 F.2d 1056, 1060 (4th
Cir. 1986) (applying objective standard); *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207,
210 (4th Cir. 1988) (same).

        [8]*See also Kotsilieris v. Chalmers*,  966 F.2d 1181, 1185 (7th Cir. 1992) (noting that, in
the context of a motion for sanctions, a bad faith inquiry requires an "objective" analysis, and
defining bad faith as "reckless and indifferent conduct").

Clare failed to identify herself to Guidry during the phone calls in December 2004 and January 2005. Section 1692d(6) requires that debt collectors provide "meaningful disclosure" of the their identity. There is not a scintilla of evidence that suggests that Clare failed to make a "meaningful disclosure" of her identity when she called Guidry. To the contrary, it is undisputed that during the course of these phone calls, Guidry stated that she had already paid the debt owed. It necessarily follows from this statement that Guidry knew, at a minimum, the debt to which the caller was referring; namely, Guidry's debt to Cheer. Moreover, the undisputed evidence shows that Clare sent Guidry two letters leaving no doubt that Cheer was the creditor. Because no reasonable attorney could have believed that this claim was grounded in fact or law, it appears that it was filed in bad faith and for the purpose of harassment. Accordingly, sanctions are appropriate under both Rule 11 and the FDCPA.

In her second FDCPA claim, Guidry argued that defendants violated 15 U.S.C. § 1692(e)(4)-(5) by filing a criminal complaint because, as debt collectors, they were forbidden from doing so. Neither the FDCPA nor Virginia law supports Guidry's argument.

Section § 1692(e)(4) provides in pertinent part that:

> The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person ***unless such action is lawful and the debt collector or creditor intends to take such action***. (emphasis added).

Additionally, § 1692(e)(5) forbids a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken." As these provisions reflect, Guidry's contention that debt collectors are categorically forbidden from filing criminal complaints is utterly baseless. Were Guidry correct in her assertion that debt

8

collectors are categorically barred by the FDCPA from seeking arrest warrants for debtors, debt collectors would be exposed to FDCPA liability every time they sought help from the authorities.  The FDCPA does not command this nonsensical result, nor was plaintiff able to cite any supporting authority.  There is none.  To the contrary, the very FDCPA provisions that Guidry cites make clear that a debt collector may threaten legal action, where permitted by law, provided the collector intends to follow through on these threats.  *See id.*  Given that Clare did seek a warrant for Guidry's arrest, there can be no question about her intentions.

Guidry's contention that Clare lacked standing to seek a warrant for her arrest is equally meritless: Virginia law makes clear that any person can lawfully seek to have a criminal warrant issued, and such warrant will issue if the officer investigating the complainant finds that there is probable cause to believe that a criminal offense took place.  Indeed, Clare plainly had ample statutory and factual bases for doing so.  *See* Va. Code § 19.2-72 (describing process by which criminal warrant can be sworn out based on complaint); *Cf.* Va. Code. § 18.2-181 *et seq.* (detailing statutory scheme for larceny by check); Va. Code. § 18.2-185 (providing immunity for complaining party seeking arrest warrant for debtor passing bad checks where debtor had five days notice of returned check); Va. Code § 19.2-72 (permitting issuance of warrant based where probable cause exists).[9]

---

[9]The Commonwealth Attorney's decision to prosecute Guidry on the misdemeanor larceny by check charges related to Guidry's debt to Clare is further evidence that Clare did not act improperly in seeking a warrant for Guidry's arrest.  Indeed, the Commonwealth Attorney's decision to prosecute Guidry likely reflects his belief that there was sufficient evidence on which a judge could conclude beyond a reasonable doubt that Guidry committed the crime at issue.

Guidry's second claim was plainly frivolous, factually and legally. Because no "reasonable attorney in like circumstances" could have believed this claim was justified, sanctions are appropriate under both Rule 11 and the FDCPA.

In her third FDCPA claim, Guidry argues that defendants violated 15 U.S.C. § 1692(e)(7) by falsely representing to Prince William County authorities that she committed a crime in order to disgrace her. In this regard, it bears repeating that Guidry concedes that she gave defendants a bad check, and that, at the time Clare went to the authorities, Guidry had not paid her debt to Cheer. By definition, then, Clare's representation to the police that Guidry had defaulted on her debt was true and accurate in every respect. Moreover, Prince William County authorities must have determined that there was probable cause to believe that Guidry had indeed committed a crime, or else they would not have issued a warrant. *See* Va. Code § 19.2-72 (requiring probable cause as a prerequisite for issuance of warrant). Accordingly, Guidry's allegation that Clare made a false representation to authorities is squarely contradicted by the undisputed facts that would have been evident in the course of any good faith investigation of the facts, as required by Rule 11, Fed. R. Civ. P.

Nor is there any evidence that Clare sought the assistance of the authorities to disgrace Guidry. In this regard, Guidry offers nothing more than her own unsupported, conclusory, and self-serving statement. By contrast, the undisputed record shows that Clare sought for several months to resolve this $62.50 debt without involving the authorities, and only did so as a last resort. Because this claim is utterly devoid of any factual or legal basis, it is apparent that plaintiff asserted this claim for improper purposes

and to harass defendants.  Hence, sanctions are appropriate under Rule 11 and the FDCPA.

In her fourth FDCPA claim, Guidry alleges that defendants violated 15 U.S.C. § 1692e(10) by falsely representing "that Defendant [sic] was the alleged victim of the fraud, and that Defendant [sic] had provided a five day notice via certified mail to Plaintiff of the returned check."  Here, yet again the undisputed facts are that Guidry did in fact owe Cheer the debt in question, and that Guidry had not paid that debt despite defendants' repeated efforts to collect the debt.  In this regard, it bears repeating that Prince William County authorities found probable cause to believe that Guidry had in fact defrauded Cheer and failed to make good on a debt she owed—otherwise the authorities would not have issued the misdemeanor warrant for Guidry's arrest.  Accordingly, there is no basis in fact to support Guidry's contention that either Cheer or Clare falsely represented that Guidry had defrauded them.

Next, Guidry's allegation concerning five day notice via certified mail, fails to state a claim under 15 U.S.C. § 1692e(10).  Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or to attempt to collect any debt or to obtain information concerning a consumer."  Here yet again, the undisputed evidence demonstrates that Guidry owed the debt to Cheer and that Guidry failed to pay this debt. In any event, Plaintiff's counsel has failed to explain how the allegation that "Defendant [sic] had provided a five day notice via certified mail to Plaintiff of the returned check" could constitute "an attempt to collect any debt or to obtain information concerning a consumer" under 15 U.S.C. § 1692e(10).  Because this claim is frivolous both factually

and legally, here again, sanctions are appropriate under both Rule 11 and the FDCPA.

In her fifth FDCPA claim, Guidry argues that defendants violated 15 U.S.C. § 1692e(10) by failing to disclose that ARA was an alter ego of Cheer. This allegation fails to state a claim under § 1692e(10). If it were sufficient, the mere fact that defendants triggered the false name exception to § 1692a would be a per se violation of § 1692e(10). Guidry points to no case in which the use of an alias, standing alone, is sufficient to expose a debt collector to liability. Nor does there appear to be any authority to the contrary—there appears to be no case in which any court has evaluated a similar FDCPA claim. Although this claim, like each of plaintiff's FDCPA claims, is meritless, it cannot be said, however, that this claim is sufficiently untethered to the facts or law to warrant sanctions; accordingly, although this claims fails as a matter of law, no sanctions are warranted on the basis of this claim.

In her sixth FDCPA claim, plaintiff alleges that Clare failed to make any required disclosures in violation of 15 U.S.C. § 1692e(11) and § 1692g. As for § 1692e(11), Clare's letters contain the very § 1692e(11) disclosures that Guidry argues were lacking. Section 1692e(11) requires a debt collector to disclose in the initial communication with the debtor "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." The June 9, 2004 letter from Clare's attorney to Guidry stated, "*[p]ursuant to U.S.C. § 1692(e)(11)*, please take notice that the purpose of this letter is an attempt to collect a debt and any information you provide to us will be used to collect the debt." (emphasis added). The October 25 letter from ARA made materially identical disclosures. Accordingly, it is pellucidly clear that Guidry's claim

that Clare violated 15 U.S.C. § 1692e(11) is squarely contradicted by the record evidence. No reasonable attorney in like circumstances could have concluded otherwise; accordingly, sanctions are warranted on this portion of plaintiff's sixth FDCPA claim.

By contrast, Guidry's claim under 15 U.S.C. § 1692g does not appear to have been frivolous. Rather, it was dismissed because it was untimely. Therefore, sanctions are warranted only as to plaintiff's § 1692e claim.

In her seventh FDCPA claim, Guidry alleges that Clare violated 15 U.S.C. § 1692e(16) by using the name ARA, which was not the true name of the debt collector. This claim is frivolous. No reasonable attorney could have concluded otherwise. § 1692e(16) forbids "[t]he false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title." There is not even a scintilla of evidence that Clare represented or implied that she operated or employed a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).[10] Accordingly, plaintiff's claim in this regard is also devoid of any legal or factual basis, and sanctions are therefore appropriate.

In sum, although there is a factual basis from which one might reasonably conclude that defendants qualify as "debt collectors" within the meaning of the FDCPA, five and one half of plaintiff's seven FDCPA claims are frivolous, unsupported in fact or

---

[10]15 U.S.C. § 1681a(f) defines the term "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

law, or both.  No reasonable attorney in like circumstances could have concluded

otherwise.  The record reflects that despite Clare's persistent efforts to secure Guidry's

payment of her $62.50 debt to Cheer following the return of Guidry's check for

insufficient funds, these efforts only bore fruit after Guidry was arrested and prosecuted

for larceny by check, including felony charges unrelated to the case at bar.  As a

consequence of Clare's efforts, she has now been sued twice by Guidry for alleged

violations of the FDCPA.  At least with respect to the FDCPA claims asserted in this

case, it appears that plaintiff's counsel skimmed the statutory language, cavalierly

alleging a violation of various FDCPA sections that defendants might have violated.

Even giving plaintiff's counsel every benefit of the doubt, the majority of the claims

asserted are not only devoid of any factual basis, many of them are directly contradicted

by the undisputed material facts.  Had plaintiff's counsel conducted even a cursory review

of the very modest record in this case (including the documents central to plaintiff's

assertion of federal subject matter jurisdiction), and the sections of the FDCPA they

allege defendants violated, it would been obvious that there was no good faith basis for

several of these claims.

Plaintiff's state law claims are equally frivolous.  Guidry asserted claims alleging

intentional infliction of emotional distress, malicious prosecution, and false

imprisonment.  Taking each in turn, a claim for intentional infliction of emotional

distress, unaccompanied by physical injury, requires that the wrongdoer's conduct be: (i)

intentional or reckless; (ii) outrageous and intolerable given generally accepted standards

of decency and morality; and (iii) causally connected to (iv) plaintiff's severe emotional

distress. *Womack v. Eldridge*, 210 S.E.2d 145, 342 (1974). Malicious prosecution requires that (i) "the prosecution was set on foot by the [now] defendant and that it terminated in a manner not unfavorable to the [now] plaintiff; (ii) that it was instituted, or procured by the cooperation of the [now] defendant; (iii) that it was without probable cause; and (iv) that it was malicious." *Neise v. Klos*, 222 S.E.2d 798, 800 (Va. 1976). Finally, false imprisonment is "the direct restraint by one person of the physical liberty of another without adequate legal justification." *Jordan v. Shands*, 500 S.E.2d 215, 218 (Va. 1998) (citations omitted).

Each state claim is expressly predicated on one or both of the following manifestly mistaken assumptions: (I) that Clare sought an arrest warrant out of malice or an intent to harm or embarrass Guidry; and (ii) that, as a debt collector, Clare had no standing to seek an arrest warrant for Guidry. With respect to the former assumption, for the reasons already stated, there is not a scintilla of evidence in the record to suggest that Clare harbored any malicious or evil intent towards Guidry. To the contrary, the undisputed record in this case suggests that Clare sought out a warrant only as a last resort after numerous other, less drastic measures to collect from Guidry a debt that Guidry concedes she owed and that she had tried to pay with a bad check. Other than her own *ipse dixit*, Guidry has offered no evidence whatsoever in support of this assertion of malicious or evil intent. And, for the reasons already stated with respect to Guidry's fourth FDCPA claim, Guidry's assertion that Clare lacked standing to seek out an arrest

warrant is baseless.[11]   Accordingly, sanctions are warranted under Rule 11 as to plaintiff's

state law claims as well.  Given that an award of sanctions is warranted with respect to

virtually all of plaintiff's claims, the final task is to determine the appropriate amount of

such sanctions.

The legal principles dispositive of a fee petition are well-settled.  First, the fee

applicant—here, Clare—bears the burden of establishing by clear and convincing

evidence the amount of a reasonable fee in the circumstances.  *See Hensley v. Eckerhart*,

461 U.S. 424, 433 (1983).  "The most useful starting point for determining the amount of

a reasonable fee" is to determine the lodestar amount, or "the number of hours reasonably

expended on the litigation multiplied by a reasonable hourly rate."  *Id.*  In this regard,

"[p]roper documentation is the key to ascertaining the number of hours reasonably spent

on legal tasks."  *See EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 673 (E.D. Va. 1988).

Indeed, fee claimants must submit documentation that reflects "reliable contemporaneous

recordation of time spent on legal tasks that are described with reasonable particularity,"

sufficient to permit the court to weigh the hours claimed and exclude hours that were not

"reasonably expended."  *Id.* (citing *Hensley*, 461 U.S. at 433).  Inadequate documentation

includes the practice of grouping, or "lumping," several tasks together under a single

entry, without specifying the amount of time spent on each particular task.  *See, e.g.*, *In re*

*Great Sweats, Inc.*, 113 B.R. 240, 244 (Bankr. E.D. Va. 1990) (disapproving the practice

---

[11]While Guidry relinquished her state claims at oral argument in the face of defendants'
submitting dispositive motions, this came long after the point at which defendants could have
avoided incurring costs and fees associated with those claims.  Thus, plaintiff's twelfth-hour
relinquishment of meritless state claims comes too late to avoid sanctions.

of "lumping" several tasks under a single entry without specifying the amount of time spent on each task so that no accurate determination of the reasonableness of the time expended can be made); *In re WHET, Inc.*, 58 B.R. 278, 280 (Bankr. D. Mass. 1986) (noting that "lumping" a day's activities makes attorneys' records of absolutely no value for any analytical purpose).

Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case.  Such a reduction can be accomplished in one of two ways: (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved.  *See EEOC*, 685 F. Supp. at 576 (*citing Uzzell v. Friday*, 618 F. Supp. 1222, 1226, 1229 (M.D.N.C. 1985) (fees reduced 25% for attorneys and 35% for paralegals as a result of inadequate documentation)).

The determination of a fee award must also be informed by "other considerations that may lead the district court to adjust the fee upward or downward," including the twelve *Johnson* factors.  *Hensley*, 461 U.S. at 434 (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)).[12]  Importantly, fixing the appropriate

---

[12]Specifically, the twelve *Johnson* factors are as follows: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal services; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11)

amount of sanctions to be awarded is, in the end, a matter of judgment, and not merely or

solely the result of an arithmetic exercise.  To be sure, the exercise must begin with a

consideration of the arithmetic calculation of the lodestar figure.  But, this is only the

starting point in the analysis.  Once the lodestar figure is calculated, the district court, as a

matter of judgment, must then assess whether that figure should be adjusted, upward or

downward, on the basis of all the circumstances in the case, including the *Johnson*

factors.  As one circuit court put it, ultimately, "[t]he matter of attorney fees rests, of

course, within the sound discretion of the trial judge, who is in the best position to

determine whether, ... [and to what extent], they should be awarded." *Kimberly-Clark*

*Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1458 (Fed. Cir. 1984).  And in all instances,

it is important to remember that "[a] request for attorney's fees should not result in a

second major litigation." *Hensley*, 461 U.S. at 437.

Here, defense counsel spent a total of 131.8 hours litigating this case.  This hourly

total must be multiplied by a "lodestar rate," which is the prevailing market rate for the

services rendered.  *See Blum v. Stenson*, 465 U.S. 886, 895 (1984).  Defense counsel's

proposed lodestar rate of $200 per hour is reasonable given the documentation by plaintiff

suggesting that attorneys of comparable experience in the Washington, D.C. area could

command an hourly rate of $235.  Multiplying defense counsel's hourly total by the

lodestar rate yields a total lodestar amount of $26,360.

Yet this does not end the analysis, because not all of defense counsel's time was

_____

the nature and length of the attorneys' professional relationship with the client; and (12) awards
in similar cases.  *See Johnson*, 488 F.2d at 717-19.

18

spent litigating claims ultimately determined to be frivolous: Of plaintiff's ten state and

federal claims, only eight claims plus a portion of another claim warrant sanctions.

Because it is not possible to determine from defense counsel's submissions what amount

of time was expended defending frivolous claims, a reduction in the lodestar rate is

appropriate. *America Online, Inc. v. Bagley*, 2006 WL 1303145 E.D. Va. 2006 (noting

that "lumping and other types of inadequate documentation" are a proper basis for a

reduction of a fee award).  The lodestar figure must be further reduced because the fee

claims submitted by defendant are too inadequately detailed to permit a confident

assessment of the reasonableness of the time spent disputing this claim.  Specifically, a

number of tasks are lumped together for a single block of time.  This lumping provides a

proper basis for reducing the fee award because it prevents an accurate determination of

the reasonableness of the time expended, and it may be accomplished by reducing the

overall fee award by a fixed percentage or amount based on the trial court's familiarity

with the case, its complexity, and the counsel involved .  *See, e.g., In re Great Sweats,*

*Inc.*, 113 B.R. 240, 244 (Bankr. E.D. Va. 1990) (disapproving the practice of "lumping"

several tasks under a single entry without specifying the amount of time spent on each

task so that no accurate determination of the reasonableness of the time expended can be

made); *In re WHET, Inc.*, 58 B.R. 278, 280 (Bankr. D. Mass. 1986) (noting that

"lumping" a day's activities makes attorneys' records of absolutely no value for any

analytical purpose).

   A final comment is in order.  It cannot be forgotten or overlooked that this fracas,

indeed litigation war, was spawned by Guidry's failure to pay a $62.50 debt, or rather by

19

her attempt to pay it with a bad check.  By no stretch of the imagination should this

circumstance have resulted in the filing of two lawsuits and the expenditure of a not

insubstantial amount of time and effort by this Court to dispose of the matter and counsel

to litigate it.  Simply put, this litigation should never have happened.  Lawyers need to

examine carefully the facts of a case before they institute litigation and they must

maintain a sense of proportion and common sense when they do so.

In sum, based on a review of the record as a whole, and based on this Court's

familiarity with the case, the issues raised and the proceedings required, it is appropriate

to reduce defendants' requested award by approximately 40%, to $16,000.[13]

An appropriate order will issue.


                                              ___/s/_____

Alexandria, Virginia                                  T. S. Ellis, III
August 10, 2006                                    United States District Judge

---

[13]It should be noted that, independent of Rule 11 and the FDCPA, a district court also retains the ability under its inherent powers to award fees and costs in frivolous cases.  *See, e.g.*, *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 543 (4th Cir. 2002).  Given the facts and circumstances of this case, an exercise of these inherent powers is warranted to reach the same result even had Clare's claims for sanctions pursuant to Rule 11 and the FDCPA failed.